UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
ANN M. MARCOUX, ET AL.,

                Plaintiffs,

   -against-                            ORDER

AMERICAN AIRLINES, INC., A.M.R. CORP.,    04 CV 1376(NG)(KAM)
ASSOCIATION OF PROFESSIONAL FLIGHT
ATTENDANTS,

                Defendants.

-----------------------------------------X

MATSUMOTO, United States Magistrate Judge:

       On November 13, 2006, plaintiffs, members of the Association of Professional Flight Attendants ("APFA" or "Union Defendants") moved to renew their motion to compel production of the Bankruptcy Petition and First Day Motions that defendants American Airlines, Inc. and A.M.R. Corporation ("AA" or the "Company Defendants") prepared but did not file in April 2003. (See docket no. 148, Pltfs' 11/13/06 Ltr.) These discovery requests were part of a prior motion to compel by plaintiffs (docket no. 138), and were denied by the Court in an order dated October 20, 2006 (docket no. 146, "10/20/06 Order").[1] For the reasons stated herein and at the status conference on December 5, 2006, the Court denies plaintiffs' motion to renew its motion to

---

[1] Plaintiffs have separately appealed other portions of the Court's October 20, 2006 order to District Judge Gershon (see docket no. 147).

-1-

compel.

## BACKGROUND

Plaintiffs bring the instant lawsuit alleging that the defendants imposed a Restructuring Participation Agreement ("RPA") on American Airline's flight attendants without proper ratification by the union members in violation of, *inter alia*, the Railway Labor Act, 45 U.S.C. §§ 151-188, and the duty of fair representation. The discovery requests at issue in plaintiffs' motion to renew are document request no. 29, which calls for "All petition(s) for relief under Title 11 of the United States Code AMR prepared between January 2000 and May 1, 2003" and document request no. 32, which calls for "All motion(s) or draft motion(s) AMR prepared to be filed with or shortly after the bankruptcy petition referred to in Request # 29." (See docket no. 148, Ex. A.) In its October 20, 2006 order, the Court denied plaintiffs' motion to compel production of these draft documents, finding, "based on the weight of legal authority cited in AA's opposition, that the draft bankruptcy petitions and motions sought by plaintiffs are protected by the attorney-client and attorney work product privileges and were prepared in anticipation of litigation." (10/20/06 Order at 11.)

In support of their motion to renew, plaintiffs assert that the "record . . . changed" after they received the report of

AA's expert, Jerrold A. Glass, on October 31, 2006. (See Pltfs' 11/13/06 Ltr. at 1 and Ex. B to Pltfs' 11/13/06 Ltr., Expert Opinion of Jerrold A. Glass (the "Glass Report").) Plaintiffs argue that Glass, in his report, "speculates on what would have happened if the Company Defendants had filed for bankruptcy in March or April 2003," thus effecting a waiver of the attorney-client and attorney work product privileges applicable to the Bankruptcy Petition and First Day Motions. (Pltfs' 11/13/06 Ltr. at 1.) In their response to plaintiffs' motion (see docket no. 151, Defts. 11/16/06 Ltr.), the Company Defendants argue that plaintiffs' motion is time-barred, deny that Glass relied on any proposed drafts of AA's Bankruptcy Petition or First Day Motions, deny that Glass's expert report constitutes a waiver of privilege, and request an award of attorneys' fees and costs for opposing plaintiffs' motion.

## DISCUSSION

### I. Timeliness of Plaintiffs' Motion

Plaintiffs frame their submission as a "motion to renew" their prior motion to compel with respect to the Bankruptcy Petition and First Day Motions. Plaintiffs do not identify the rule of procedure under which they seek to bring their motion to renew. Presumably, because they have raised the matter before the magistrate judge, plaintiffs are seeking to

invoke Local Civil Rule 6.3, which provides: "A notice of motion for reconsideration . . . of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion . . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked."  Plaintiffs have not complied with Local Civil Rule 6.3's prescribed time limits, notice of motion and memorandum of law.

Had the plaintiffs timely brought their application before the district court judge, Fed. R. Civ. P. 72(a) would have applied.  That Rule provides that:

> Within 10 days after being served with a copy of the magistrate judge's order [regarding a nondispositive matter], a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.  The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a).  See also 28 U.S.C. § 636(b)(1). Plaintiffs have expressly stated in their objections to specific aspects of the Court's October 20, 2006 order that they were not objecting to other aspects of the order.  (See docket no. 147 at 16.)

In either case, the Court finds that plaintiffs'

November 13, 2006 submission, whether considered as a motion for reconsideration pursuant to Local Civil Rule 6.3 or an objection to the Court's order under Fed. R. Civ. P. 72(a), is not timely, because the motion was filed more than ten days after the Court's November 20, 2006 Order.  Moreover, plaintiffs do not explain why they waited more than ten days after receiving the Company Defendants' expert report on October 31, 2006 to file their so-called motion to renew.

Even assuming that plaintiffs' motion was timely filed, however, the Court finds that defendants have not waived any of their previously asserted privileges with respect to the Bankruptcy Petition and First Day Motions for the reasons stated below.

**II.  Defendants' Alleged Waiver of Privilege**

**A.  Information "Considered" by AA's Expert**

In their motion to renew, plaintiffs do not challenge the Court's finding in its October 20, 2006 order that the Bankruptcy Petition and First Day Motions prepared by the Company Defendants' counsel, but never filed, are protected by the attorney-client and attorney work product privileges and were prepared in anticipation of litigation.  Instead, plaintiffs argue that the Company Defendants have waived the privileges associated with these documents by requesting their expert to

assume in his report that the bankruptcy petition and motions were filed.

Fed. R. Civ. P. 26(a)(2)(B) sets forth the disclosure requirements regarding experts, and directs that an expert report must disclose, *inter alia*, "the data or other information considered by the witness in forming the opinions" in the report. The Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 26(a)(2)(B) clarify that "[g]iven this obligation of disclosure, litigants should no longer be able to argue that materials *furnished* to their experts to be used in forming their opinions -- whether or not ultimately relied upon by the expert -- are privileged or otherwise protected from disclosure when such persons are testifying or otherwise being deposed" (emphasis added). See also Constr. Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 50 (E.D.N.Y. 2001) (noting that "documents and information *disclosed* to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report" (quoting In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001) (emphasis added))).

In his report, Glass describes the subject matter as to which he was requested to render an opinion:

> I have been directed by counsel for American Airlines to assume that the parties had not reached a consensual agreement and that on or about March or April 2003, the company had

> filed for Chapter 11 bankruptcy protection
> and filed a Section 1113 motion to reject the
> 2001 collective bargaining agreement. Given
> that assumption, I have been asked to render
> an opinion as to whether the APFA 2001
> agreement would have remained unchanged,
> would have been modified to be substantially
> equivalent to the terms of the consensual
> Restructuring Participation Agreement (RPA),
> or would have contained additional
> concessions above and beyond those in the
> RPA.

(Glass Report ¶ 12.)

It is clear that Glass never received nor considered the Bankruptcy Petition or First Day Motions in preparing his report. Glass notes that in preparing his report he reviewed the restructuring agreements negotiated with flight attendant unions across the industry in the post-9/11 environment, and that "[e]ach agreement was analyzed by reading the actual restructuring agreement, reviewing the summaries produced by the union, or by examining court papers filed in connection with an [sic] § 1113 motion." (Id. ¶ 18) In a subsequent declaration, Glass further specifically states that he was not provided with, did not have access to, and did not review any bankruptcy papers prepared by AA's bankruptcy counsel for possible filing during March or April 2003, and that he examined only the court papers of airlines other than AA that were filed in connection with a § 1113 motion. (Docket no. 151, Ex. A, November 16, 2006 Declaration of Jerrold A. Glass ("Glass Declaration") ¶¶ 3 and 4.)

Given Glass's statements in his report and his declaration, the Court finds that Glass did not consider the Bankruptcy Petitions or First Day Motions in preparing his report, and did not thereby effect a waiver of the attorney-client privilege or attorney work product protection associated with these documents.

**B. "At Issue" or Implied Waiver**

Even if Glass did not consider the Bankruptcy Petition and First Day Motions, plaintiffs argue that "Defendants' act of proffering the expert and his Report effected an 'at issue' waiver" and that it would be a "denial of due process to permit defendants to speculate on the outcome of judicial proceedings while withholding the papers they had prepared to initiate those proceedings . . . ." (Pltfs' 11/13/06 Ltr. at 2.) The broad application of the "at issue" waiver advocated by plaintiffs would eviscerate all privileged material related to the subject matter of an expert's opinion and is not supported by the law.

The Second Circuit has held that a party may impliedly waive its privileges with respect to documents or information where it "asserts a claim that in fairness requires examination of protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). "[F]airness considerations arise when the party attempts to use the privilege both as 'a shield

and a sword.'  In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citing Bilzerian, 926 F.2d 1285 and In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987)).  "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." Id. at 182-83 (quoting In re Kidder Peabody Secs. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).  "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." Id. at 183.

The factors relevant to whether there has been an at issue waiver were first articulated in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), which has been cited with approval in this Circuit.  Those factors are:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Hearn, 68 F.R.D. at 580.  See also Bilzerian, 926 F.2d 1285, 1292

(2d Cir. 1991) (affirming district court's ruling that defendant's use of advice-of-counsel defense would waive his attorney-client privilege, and citing with approval <u>Hearn</u>); <u>Granite Partners, L.P. v. Bear, Stearns & Co.</u>, 184 F.R.D. 49, 55 (S.D.N.Y. 1999) (citing <u>Hearn</u> factors and finding waiver of work product privilege where plaintiff used work product documents to impeach witnesses and published portions of the documents in a report); <u>In Re Kidder Peabody Securities Litigation</u>, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (citing <u>Hearn</u> factors and finding waiver of work product and attorney-client privileges as to attorneys' interview notes and memoranda which formed basis for report published and used in litigation by defendant). Thus, the waiver is applied only when the privileged communication information is relied upon or disclosed.

Applying these principles, the Court finds that the Company Defendants have not placed the Bankruptcy Petition and First Day Motions at issue in this action. With regard to the first prong, in defending against plaintiffs' allegations, the Company Defendants have requested their expert to assume that AA had filed for bankruptcy in March or April 2003 and to prepare an opinion -- based on a review of other restructuring agreements in the industry -- on how the resulting APFA 2001 agreement would have been affected if the Company Defendants had filed a petition for Chapter 11 protection and a Section 1113 motion to reject the

APFA 2001 agreement, and compare the possibly modified APFA 2001 agreement with the terms of the RPA that was ultimately implemented.  In so doing, the Company Defendants' expert has stated under oath that he was not provided with the Bankruptcy Petitions or First Day Motions.  The Company Defendants have continued to assert that these documents, which were never filed, are protected by the attorney-client privilege and attorney work product doctrine.

With regard to the second prong, the Company Defendants have not placed the protected information at issue because Glass's report does not rely on the draft Bankruptcy Petition and First Day Motions.  The expert report assumes that AA filed for bankruptcy, but does not rely on the content of the Bankruptcy Petition or First Day Motions, and instead is based on a review of other Chapter 11 and Section 1113 motions and restructuring agreements in the industry.  The content of the Bankruptcy Petition and First Day Motions are thus not relevant to an evaluation of the expert's report and have not been placed at issue.

Third, the Company Defendants' assertion of the privilege does not deny the plaintiffs access to information vital to their case.  As the Company Defendants have previously noted, plaintiffs have been provided with the Section 1113 proposal term sheet (see docket no. 141, Company Defts' 9/8/06

Ltr. at 2 and Ex. D, Section 1113 proposal), and "have deposed key Company and Union witnesses about the presentation of the 1113 proposal in negotiations and the impact of a bankruptcy filing on flight attendants" (Company Defts' 9/8/06 Ltr at 2 and Exs. E-G). Plaintiffs may also seek an expert opinion, based on the same data relied upon by the Company Defendants' expert, that may challenge the conclusions of the Glass report.

A comparison of the present case with the facts in Granite Partners, L.P., 184 F.R.D. 49, cited by plaintiffs, is instructive. In that case, plaintiffs' litigation advisory board sued defendants based on a report by the plaintiffs' bankruptcy trustee which analyzed the causes leading to the collapse of the plaintiffs' investment funds. Defendants moved to compel plaintiffs to produce the witness interview notes, valuations and analyses, and third-party documents upon which the trustee's report was based, and which plaintiffs argued were protected as attorney work product. The court found that plaintiffs had impliedly waived the work-product privilege with respect to these documents, because (i) the trustee's report made selective use of interview notes and expert analyses, (ii) the trustee's interview notes were used to impeach witnesses for the defendant, and (iii) the report relied on analysis by the trustee's expert which "placed the accuracy of his data and the validity of his analyses at issue and, thus, waives [the] privilege on the supporting

documents [for the expert's analysis]." Id. at 55. The court further held that the defendants had shown substantial need for the material sought, because "[w]ithout access to the data and analyses used by the Trustee's experts, no expert retained by the Moving Defendants will be able to reconstruct the methodology used and assumptions made by [the trustee's expert] in creating the 'benchmark' prices which form the basis for the [plaintiffs'] claims . . . in the [trustee's] Final Report and in the Amended Complaint." Id. at 56.

The facts in the present case do not provide plaintiffs with a similarly compelling justification for asserting a waiver of the Company Defendants' privilege with respect to the Bankruptcy Petition and First Day Motions. As discussed above, the Company Defendants have requested their expert only to assume that AA had filed for bankruptcy but did not disclose the Bankruptcy Petition and First Day Motions to the expert, and thus have not sought to use the content of the draft Bankruptcy Petition and First Day Motions against the plaintiffs. Plaintiffs are able to challenge the conclusions of the Glass report by analyzing the same data relied upon by Glass, which is disclosed in the expert report. (See Glass Report, ¶¶ 13, 18 and Attachment II.)

For the same reasons, the Court again finds that plaintiffs' renewed argument, pursuant to Fed. R. Civ. P.

26(b)(3), that the work product doctrine should not apply because plaintiffs have substantial need for the Bankruptcy Petition and First Day Motions and no other means of obtaining the substantial equivalent of these materials, is without merit. (Pltfs' 11/13/06 Ltr. at 3.) Plaintiffs are able to perform the same analysis undertaken by the Company Defendants' expert and are not prejudiced by the non-disclosure of the Bankruptcy Petition and First Day Motions. Moreover, they may depose and subsequently cross-examine Mr. Glass at trial regarding his opinion, in which he assumes that the Chapter 11 petition and Section 1113 motions were filed and draws conclusions without actually having examined such documents.

### III. Defendants' Motion for Fees and Costs

Defendants have requested attorney's fees and costs associated with responding to plaintiffs' motion to compel, arguing that plaintiffs have attempted to re-litigate an issue that was "both time-barred and baseless." (Defts' 11/16/06 Ltr. at 3.) Notwithstanding the Glass Declaration's clear statement that Glass did not rely on any of the draft Chapter 11 petitions and Section 1113 motions prepared by AA's counsel, plaintiffs appear to have brought their motion, before receiving the Glass Declaration, based on a mistaken belief that the Glass report effected a waiver of privilege. Although the Court declines to

award fees and costs to the Company Defendants with regard to the instant motion, plaintiffs should be well advised to carefully examine the facts and law as required by Rule 11, to avoid unnecessary motion practice in the future.

## CONCLUSION

Having found that the Company Defendants' expert report did not effect a waiver of their privileges regarding their proposed Bankruptcy Petition and First Day Motions, the Court denies plaintiffs' renewed motion to compel production of these documents and declines to award costs and fees to the Company Defendants. The parties have reported that discovery is completed. The parties shall seek pre-motion conference requests before Judge Gershon by January 8, 2007.

Dated: December 6, 2006
      Brooklyn, New York

**SO ORDERED.**

_____/s/_____
KIYO A. MATSUMOTO
United States Magistrate Judge